IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
(HEARD AT DYERSBURG)

FILED

July 6, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed:    July 6, 1998

WHITEHAVEN COMMUNITY          )
BAPTIST CHURCH, FORMERLY      )
KNOWN AS FAIRWAY MISSIONARY   )
BAPTIST CHURCH, AND           )
T.L. JAMES, SR.,              )
                              )
        PLAINTIFFS/APPELLANTS,     )          SHELBY CHANCERY
                              )
v.                            )          Hon. Neal Small, Chancellor
                              )
ALCUS HOLLOWAY AND            )          No. 02S01-9709-CH-00084
GENEVA HOLLOWAY,              )
                              )
        DEFENDANTS/APPELLEES.       )

FOR APPELLANTS:                      FOR APPELLEES:

Charles R. Curbo                     Herschel L. Rosenberg
Memphis                              Memphis

# O P I N I O N

AFFIRMED AS MODIFIED                                    HOLDER, J.

**OPINION**

We granted this appeal to determine whether summary judgment was properly granted in this case involving claims for recision of contract and unjust enrichment. The Court of Appeals affirmed the trial court's order granting the defendants' motion for summary judgment on both issues. Upon review, we affirm the appellate court as modified.[1]

**BACKGROUND**

The plaintiffs in this case are Whitehaven Community Baptist Church ("Whitehaven") and T.L. James, Sr. ("James"). Whitehaven purchased a parcel of land on which it intended to construct a new church. The parcel of land was partially secured by a first mortgage in the amount of $ 120,000.00. Whitehaven then contracted with James for James to be the general contractor in the construction of the new church.

The plaintiffs encountered financial problems after beginning construction. Whitehaven was subsequently unable to obtain construction loans from commercial lenders. James, acting on behalf of Whitehaven, began negotiations with the defendants, Alcus and Geneva Holloway, in an attempt to obtain a short-term construction loan. Both the plaintiffs and the defendants reached an agreement on the terms of the short-term loan. A contract was then prepared by attorney Garvin Holland who had represented the plaintiffs in prior real estate transactions.

---

[1]Oral argument was heard in this case on March 4, 1998, in Dyersburg, Dyer County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

The defendants agreed to loan Whitehaven $ 100,000.00 to finance the plaintiffs' construction of a new church. The contract as executed provided in pertinent part:

This agreement entered into this 3rd day of May, 1991 by and between the Trustees of and for Fairway Missionary Baptist Church, parties of the first part and Alcus Holloway and Geneva Holloway, parties of the second part.

WHEREAS, the Trustees of Fair Way Missionary Baptist Church is the owner of lots 1, 2, 3, 8 and one/fourth Half of lot 4, Block 2, Minna Palmer Wall's Whitehaven Park Subdivision as recorded in Plat Book 9, page 142, in the Register's Office of Shelby County, Tennessee; and

WHEREAS, the Trustees of Fairway Missionary Baptist Church are in the process of constructing a building upon the said lots; and

WHEREAS, said trustees have had difficulty in obtaining construction funds for the completion of the building, and

WHEREAS, Alcus Holloway and Geneva Holloway have agreed to furnish $ 100,000.00 in construction funds to finish the building.

NOW, THEREFORE, the parties agree that under the following terms and conditions Alcus Holloway and Geneva Holloway will furnish $ 100,000.00 in construction funds:

1. The Trustees of Fairway Missionary Baptist Church must obtain a firm take-out commitment of $ 260,000.00 from a recognized lending institution. Also building must meet their specifications.

2. The trustees must carry a builders-risk insurance policy while under construction.

3. *Property deeded to Alcus Holloway and Geneva Holloway* with the understanding when the church building is finished and meets the city code inspection approval. The property is to have a clear title and no liens against it.

4. Alcus Holloway and Geneva Holloway are to furnish One Hundred Thousand Dollars ($ 100,000.00) as construction money. Alcus Holloway is to disburse this money for labor and materials, when he sees the material has gone into the building by eye-sight and receipt, then he is to pay off. There is to be bids taken for each job to complete the building.

5. Mr. T. L. James has agreed to pay Alcus Holloway and Geneva Holloway $ 120,000.00 plus 10 % interest at the closing. *When all the agreements have been fulfilled, Mr. T. L. James absolutely will have the right and will buy the property back.*

3

6. The life of this loan must be closed within seven months from the date that this agreement is signed, with all agreements fulfilled.

7. I, Rev. T. L. James, will pledge my home (house) and will secure another member of the church to pledge his home (house) as collateral, to secure the first mortgage monthly notes to Palmer Brothers of $ 998.00 until the Rev. T. L. James buys the church back.

(emphasis supplied). The contract was executed on May 3, 1991.

In consideration for the construction loan, the plaintiffs executed a warranty deed prepared by attorney Holland. The warranty deed conveyed title of the property to the defendants as collateral for the loan pursuant to the contract. The plaintiffs also declared that the property was unencumbered "except for the 1991 City and County taxes and Agreement between the Trustees of and for Fairway Missionary Baptist Church and Alcus Holloway and Geneva Holloway." The warranty deed did not mention the presence of an existing mortgage on the property.

The total sum of money that the plaintiffs borrowed from the defendants is $ 120,000.00. The record indicates that the plaintiffs have not paid **any** portion of the money that they owed to the defendants. The plaintiffs further did not procure permanent financing from an approved lending institution as provided for in the contract. Moreover, the plaintiffs defaulted on the property's first mortgage, and the defendants were compelled to pay the holder of the first mortgage $ 122,533.00 to prevent foreclosure on the property. The defendants obtained a writ of possession for the property.

The plaintiffs filed suit in chancery court seeking reformation of the contract and recision of the executed warranty deed. James also filed a claim for unjust enrichment. The defendants' motion for summary judgment was granted by the trial court. The appellate court affirmed the trial court's dismissal

of the case.  Upon review, we affirm the appellate court for the reasons set forth in this opinion.

## CONTRACT CLAIM

Whitehaven argues that the warranty deed it signed should be reformed. Whitehaven's claim is predicated on two assertions:  (1)  that it signed the warranty deed believing the document to be a mortgage; and (2)  that it was informed that the warranty deed was a mortgage.  The defendants counter that the plaintiffs were fully aware that the instrument they signed was a warranty deed.

In McCarley v. West Quality Food Serv., 960 S.W.2d 585 (Tenn. 1998), we stated:

> A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues.  Byrd v. Hall, 847 S.W.2d 209, 214 (Tenn. 1993).  Mere "conclusory assertion[s] that the non-moving party has no evidence is clearly insufficient." Id. at 215.  The movant must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense.  Id. 215 n. 5.  If the movant does not negate a claimed basis for the suit, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.  Id.
>
> If, however, the movant does successfully negate a claimed basis for the suit, the non-movant may no longer simply rely upon the pleadings.  Id.  The non-moving party must then establish the existence of the essential elements of the claim.  Id.  The non-movant's burden may be met by:
>
> > (1)  pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party;
> > (2)  rehabilitating the evidence attacked by the moving party;
> > (3)  producing additional evidence establishing the existence of a genuine issue for trial; or
> > (4)  submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

> Id. at 215 n. 6. The non-moving party's evidence shall be taken as true. Id. Moreover, summary judgment shall be denied if "any doubt whether or not a genuine issue exists." Id. at 211.

McCarley, 960 S.W.2d at 587.

The defendants submitted the affidavit of attorney Holland in support of their motion for summary judgment. Holland's affidavit indicates that he explained to the plaintiffs that the instrument was a warranty deed. Moreover, the signed document very conspicuously reads "WARRANTY DEED" in bold capitalized letters across the top of the instrument. The signed contract referred to transfer of the property and the plaintiffs' "absolute" right to buy the property back. Accordingly, the defendants have preliminarily negated a claimed basis of the plaintiffs' contract claim and triggered the non-movant's burden to establish the essential elements of their suit. We must now determine whether the plaintiffs have met their burden.

The plaintiffs proffered an affidavit of a Whitehaven trustee who claims that attorney Holland did not explain that the instrument being executed was a warranty deed. The plaintiff relies on this affidavit to show that a material issue of disputed fact exists as to whether the plaintiffs understood the document to be a warranty deed.

Upon review, we find that the defendants are entitled to summary judgment as a matter of law. Whitehaven asserts that it simply misunderstood the nature of the contract and the document it signed. An elementary precept of contract law, however, is that a court will not look beyond the four corners of a contract or to the parties' intention when the language of the contract is clear. See Bob Pearsall Motors, Inc. v. Regal Chrysler-P., Inc., 521 S.W.2d 578, 580 (Tenn. 1975) ("It is the Court's duty to enforce contracts according to their plain terms."); Cummings v. Vaughn, 911 S.W.2d 739, 742 (Tenn. Ct. App. 1995) ("If the language of the contract is clear and unambiguous, it must be construed as

6

written."). The instruments executed by the parties unambiguously indicate that title to the property was being transferred. The warranty deed conspicuously stated "WARRANTY DEED" across the top of the document.

While the affidavits may create an issue of fact, the issue is not one that is material to the resolution of the case. Byrd v. Hall, 847 S.W.2d at 215 (stating that the issues for evaluation include (1) whether a *factual* dispute exists*;* (2) whether the disputed fact is *material* to the outcome of the case*;* and (3) whether the disputed fact creates a *genuine* issue for trial.). The signed documents were unambiguous, and the plaintiffs' assertions in their affidavit do not change the unambiguous nature of those documents. The trial court's granting of summary judgment was, therefore, proper.

## UNJUST ENRICHMENT

James apparently argues that the defendants were unjustly enriched when they took possession of the property. He alleges that the defendants "have received a very substantial and valuable improvement to the property which is a benefit to them and have not paid any of the benefits for same."

Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. Paschall's Inc. v. Dozier, 407 S.W.2d 150, 154-55 (Tenn. 1966). Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. Id. at 154-55.

James was both the executive trustee of the plaintiff Whitehaven and the general contractor for the plaintiff Whitehaven. As general contractor for

7

Whitehaven, James was in charge of building the church. Whitehaven contracted with the defendants to obtain money to construct the church. The construction money was paid to James. James' deposition indicates that he retained approximately $ 500.00 or more a week from the defendants' loan as compensation. James also paid for materials and labor out of the proceeds from the defendants' loan.

This Court has previously stated that the

> most significant requirement for a recovery on quasi contract is that the enrichment be unjust. Consequently, if the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher. Also, we think that before recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable value of his services.

Paschall's, Inc. v. Dozier, 407 at 155 (Tenn. 1966).

James had a contractual or quasi-contractual relationship with Whitehaven for whom he acted as general contractor. The record does not indicate that he has attempted to exhaust his remedies with Whitehaven for any alleged deficiencies in his compensation. Whitehaven merely contracted with the defendants for the defendants to supply funding for construction. James retained money from the construction loans for compensation.[2] The defendants obtained physical possession of the property following: (1) Whitehaven's failure to repay any portion of the defendants' $ 120,000.00 loan; and (2) the defendants' payment of $ 122,533.00 to the first mortgage holder of the property to prevent foreclosure. Accordingly, the defendants have provided consideration

---

[2] James asserts in his deposition that he is entitled to the full value of the property including the completed church, which he estimates as $ 325,000.00. As a general contractor he would be entitled only to receive compensation for his services (quantum meruit). He would not be entitled to receive the fair market value of the improved property. The value of the completed church would most assuredly exceed the value of James' services as a general contractor.

for both the improvements and the property.  It is, therefore, not unjust for the defendants in this case to retain this property with its improvements.  James' claim of unjust enrichment was properly dismissed as a matter of law.

The plaintiffs' claims are dismissed with prejudice, and the case is remanded to the trial court for further proceedings on the defendants' counterclaims which are not before this Court.  Costs of this appeal shall be taxed against the plaintiffs, Whitehaven Community Baptist Church and T.L. James, Sr., for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

**CONCURRING:**

Anderson, C.J.
Drowota and Birch, J.J.